[645 NYS2d 804]

Thomas R. Tantillo, Appellant, v George McDonald et al., Respondents.

First Department, August 8, 1996

APPEARANCES OF COUNSEL

*Angelo T. Calleri, P. C.,* for appellant.

*Andrew S. Hoffmann* of counsel *(Wiseman, Hoffmann & Walzer,* attorneys), for respondents.

## OPINION OF THE COURT

NARDELLI, J.

This case involves the relationship between a union and its member. It presents the issue of whether New York is precluded from jurisdiction over the dispute because of Federal preemption.

Plaintiff was a member of defendant New York Mailers Union No. 6 of the Greater New York and Vicinity (Union), which represents certain newspaper employees, until he was expelled from the Union in November 1990, allegedly without notice or a hearing as required by the Union's constitution and by-laws. As a result of the expulsion, plaintiff lost his seniority and corresponding right to fill job vacancies. Almost three years later, in August 1993, plaintiff was laid off by the New York Daily News, where he had been employed since January 1972.

Plaintiff alleges that the Union and defendant George McDonald (McDonald), the President of the Union, refused to reinstate him as a Union member or to acknowledge his seniority and right to fill a position which had recently opened at the New York Times. Plaintiff commenced this action in August 1994, seeking compensatory and punitive damages, a declaratory judgment voiding his expulsion and reinstating him in the Union, and attorneys' fees, arguing that as a result of his expulsion from the Union, he "was and continues to be deprived of his rights and opportunities to obtain employment according to the collective bargaining agreements then [1990-1993] in effect". Plaintiff also alleges that McDonald "actively participated in the wrongful and illegal action taken by Defendant Union * * * with an intention to deprive Plaintiff of his rights and opportunities to be gainfully employed, earn his livelihood and continue as a member of Defendant Union and to receive the benefits and entitlements afforded a member of the Union under the Collective Bargaining Agreement then and subsequently in effect".

Defendants moved to dismiss the complaint for lack of subject matter jurisdiction on the ground that the claims were preempted by Federal labor law. Plaintiff cross-moved for leave

to amend his complaint to include a cause of action to enjoin defendants "from interfering with or preventing Plaintiff's free exercise of his rights and privileges as a member in good standing of Defendant Union". The IAS Court granted the defendants' motion to dismiss the complaint and denied the plaintiff's cross motion to serve an amended complaint.

Plaintiff's State law cause of action is preempted by Federal labor law. Thus, his claim that the Union improperly expelled him from membership is properly governed by section 8 of the National Labor Relations Act (49 Stat 449, 452, as amended; 29 USC § 158) and by section 102 of the Labor-Management Reporting and Disclosure Act of 1959 (73 Stat 519, 523; 29 USC § 412). When an activity is arguably protected or prohibited by the National Labor Relations Act, a State court must defer to the exclusive competence of the National Labor Relations Board (see, San Diego Unions v Garmon, 359 US 236). Preemption is required when even a potential conflict between State and Federal law exists. "The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy" (supra, at 246).

Plaintiff contends that this action falls within an exception to the Federal labor law preemption doctrine, since his claim based upon his alleged wrongful expulsion from the Union is a purely internal Union matter, which can be resolved solely by reference to the Union's constitution and by-laws. Thus, "due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. See International Assn. of Machinists v. Gonzales, 356 U.S. 617. Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." (Supra, at 243-244.)

In support of this position, plaintiff cites Machinists v Gonzales (356 US 617, supra), which permitted an expelled union member to maintain a State court action for reinstatement in the union. The Gonzales Court noted that section 8 (b) (1) of the National Labor Relations Act specifically provides that the Act does not impair the right of a union to prescribe its own membership rules, and, therefore the National Labor Relations

Board was powerless to rule upon internal union matters. "Thus, to preclude a state court from exerting its traditional jurisdiction to determine and enforce the rights of union membership would in many cases leave an unjustly ousted member without remedy for the restoration of his important union rights. Such a drastic result, on the remote possibility of some entanglement with the Board's enforcement of the national policy, would require a more compelling indication of congressional will than can be found in the interstices of the Taft-Hartley Act." (*Machinists v Gonzales, supra,* at 620.)

Thus, the *Gonzales* Court permitted the ousted member to "fill out" the remedy of reinstatement with damages for lost wages and the resulting suffering, by using the comprehensive relief of equity, notwithstanding the possibility of partial relief by the National Labor Relations Board, since the potential conflict between the State action and the National Labor Relations Act was too remote (*supra,* at 620, 621).

However, in subsequently interpreting the *Gonzales* decision, the Supreme Court stressed that *Gonzales* "turned on the Court's conclusion that the lawsuit was focused on purely internal union matters, *i.e.,* on relations between the individual plaintiff and the union not having to do directly with matters of employment, and that the principal relief sought was restoration of union membership rights." (*Plumbers' Union v Borden,* 373 US 690, 697.)

In *Borden,* the plaintiff union member alleged that his union's refusal to refer him to a particular job was a breach of internal union rules not to discriminate against any member or interfere with a member's right to work. The Court ruled that, even if the union's "refusal *and the resulting inability to obtain employment* were in some way based on respondent's [member's] actual or believed failure to comply with internal union rules", it arguably caused an employer to discriminate against the member, in violation of the National Labor Relations Act and, thus, plaintiff's claims were preempted (*supra,* at 694; emphasis in original). Further, the Court noted that whether the union's activity actually was "federally protected or prohibited" is immaterial; it is sufficient for preemption purposes to find that it is reasonably " 'arguable' " that the matter is " 'arguabl[y]' " within the National Labor Relations Board's jurisdiction (*supra,* at 696). Thus, in contrast with *Gonzales,* the claims in *Borden* were "focused principally, if not entirely, on the union's actions with respect to [the member's] efforts to obtain employment" (*supra,* at 697).

Thereafter, in a case strikingly similar to this one, the Supreme Court addressed a claim that a union member had been improperly expelled from union membership, and that the union had procured his discharge from employment pursuant to a valid union security clause (*Motor Coach Empls. v Lockridge*, 403 US 274). The Idaho State courts had asserted jurisdiction over a cause of action asserted by the union member which sounded in contract and restored Lockridge to membership, awarded him compensation for lost wages and restored his seniority rights (*supra*, at 282). The Supreme Court, however, rejected Lockridge's assertion that the complaint was not subject to the exclusive jurisdiction of the National Labor Relations Board because it charged a breach of contract rather than an unfair labor practice and noted: "Assuredly the proposition that Lockridge's complaint was not subject to the exclusive jurisdiction of the NLRB because it charged a breach of contract rather than an unfair labor practice is not tenable. Pre-emption, as shown above, is designed to shield the system from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern. Indeed, the notion that a relevant distinction exists for such purposes between particularized and generalized labor law was explicitly rejected in *Garmon* itself. 359 U.S., at 244." (*Supra*, at 292.)

While the United States Supreme Court in *Lockridge* did not specifically overrule *Gonzales (supra)*, it limited its holding to allowing State court jurisdiction where the activity regulated was a merely peripheral concern of the Act or where the State action focuses on purely internal union matters (*Motor Coach Empls. v Lockridge, supra*, at 295-296 [*comparing Machinists v Gonzales, supra, with San Diego Unions v Garmon, supra, and Plumbers' Union v Borden, supra*]).

In the instant case, the gravamen of the complaint is that after the plaintiff was terminated from the New York Daily News, the defendants wrongfully refused to recommend plaintiff for a position at the New York Times, pursuant to a collective bargaining agreement that was in effect between the newspaper and the Union. In fact, the complaint makes repeated references to that collective bargaining agreement. Such a claim can only be determined by reference to the collective bargaining agreement, which is a matter within the exclusive domain of the National Labor Relations Board. Plaintiff's claim for reinstatement to union membership is

clearly an ancillary request, made almost four years after he was expelled from the Union and appended to his main claims for damages resulting from lost employment because of Union interference. Since plaintiff's claims, that as a result of the Union's activities, he was denied employment and continues to be "deprived of his rights and opportunities to obtain employment according to the collective bargaining agreements", are *not* " 'a merely peripheral concern' " of the National Labor Relations Act or focused on a " 'purely internal union matter' " (*supra*, at 295, 296), they are preempted by Federal labor law (*see also, Peltzman v American Radio Assn.*, 69 Misc 2d 17, *affd* 40 AD2d 631, *lv denied* 31 NY2d 645, *cert denied* 411 US 916).

A claim for breach of a union's duty of fair representation is an exception to the preemption doctrine, and this Court would have jurisdiction over such a claim (*Vaca v Sipes*, 386 US 171). Plaintiff, however, never expressly pleaded such a cause of action in the complaint. To the extent plaintiff's complaint can be deemed to allege the Union breached its duty of fair representation by refusing to refer him to the New York Times, or otherwise represent his interests, it is time barred. Duty of fair representation claims are governed by the Federal six-month Statute of Limitations (*DelCostello v Teamsters*, 462 US 151; *Callens v Simmons Mach. Tool Corp.*, 110 AD2d 994, 995, *appeal withdrawn* 67 NY2d 758).

The IAS Court also properly denied plaintiff's cross motion to amend his complaint to allege a cause of action in equity for an injunction. Since the action is preempted by Federal labor law, allowing plaintiff to seek relief in equity would not have precluded such preemption. While plaintiff cites *Matter of Phalen v Theatrical Protective Union No. 1* (22 NY2d 34, *cert denied* 393 US 1000), that case simply held that our State courts had jurisdiction to entertain claims for breach of the duty of fair representation (*supra*, at 39). As noted above, if such a claim had been alleged, it would have been time barred.

Accordingly, the order of the Supreme Court, New York County (Elliott Wilk, J.), entered on or about July 21, 1995, which granted defendants' motion to dismiss the complaint for lack of subject matter jurisdiction, on the ground that the action is preempted by Federal labor law, and which denied plaintiff's cross motion for leave to replead the complaint, should be unanimously affirmed, without costs or disbursements.

MILONAS, J. P., ELLERIN, RUBIN and TOM, JJ., concur.

Order, Supreme Court, New York County, entered on or about July 21, 1995, affirmed, without costs or disbursements.